Thank you, Your Honor. May it please the court, I'd like to preserve a few minutes for rebuttal, and I believe I'll be using it all the time for our side, unless there are questions. Mr. Davis, could you speak up a little bit? I'm having trouble hearing you. Sure. I apologize, Your Honor. Can you hear me now? Can you hear me better? I apologize. You've asked that we address two issues today in oral argument. Number one, the District Court erred in invoking a Pullman stay. That decision was wrong for two main reasons. Number one, the District Court wrongly believed that lighthouse's pending state court proceedings would have a preclusive effect in the federal court case, but they would not. Second, the District Court misapplied the Pullman abstention doctrine. None of the Pullman criteria are present here, primarily because this case does not involve any state law claims, the resolution of which would avoid the need to address Commerce Clause issues. The District Court's rationale for the stay was thus an error, as nothing in the state court proceedings will bind the federal court. Only federal issues are at issue in the federal case. At trial, lighthouse would prove that the terminal would have been permitted if it had the exact same or even greater environmental impacts, but exported a different product, such as say apples or aircraft that the state government did not wish to prevent. Consider if states could ban or refuse to adopt to permit permits for otherwise legal commodities, such as for example, cars running on gas as opposed to electricity, genetically modified foods, vaccines, etc. Those types of cases belong and must be in federal court as they are critically important to the functioning of our Republic. None of the court proceedings has resulted in a real result in any ruins whatsoever to those Commerce Clause claims. For example, three are terminated up in state court proceedings, only one is still alive. None relates to whether the defendant's decision to block the terminal has a practical effect. Can I interrupt? I'm having trouble understanding the argument in this sense. You've got a proceeding going forward in state court challenging the decision under Section 401. If you win, doesn't that take care of your problem in federal court with respect to the argument you're now making? No, sir, it does not. And the reason is, that permit is only a very small part of the federal case. Yes, if we win and we get that permit, that's well and good. But this facility needs a host of permits in order to be constructed. And the state here not only has denied some, but it has refused to consider others, refused to consider them at all. And so even if we prevail on the one remaining state court case, which your honor has hit on, we would still need relief at the federal level, because they have refused to consider a host of other permits, we believe in violation of the Commerce Clause. So in your view, is the fact that only one issue would be decided? Does that make the abstention and abuse of discretion just because there are other issues also? Well, your honor, the review as to whether abstention is appropriate or not is de novo. And if the holding factors do not exist, as we believe they don't, then you don't even get to abuse of discretion. But well, but excuse me, I'm positing that one of the issues in the case would be affected by the state court's ruling. So, and I want you to assume for the sake of my question that the criteria are otherwise met. And is there some rule that every issue has to be decidable or decided by the state court? Your honor, I think the rule for Pullman abstention is there needs to be a state court issue, the resolution of which would remove the necessity to address the constitutional issue. And even if we prevailed in the state court on this one permit, that would not remove the necessity of reaching the Commerce Clause issue. Because there are a host of other issues. But that's the whole reason for that's the whole reason for my question. If there are four constitutional issues that are being brought, and if there is success on one in state court that would be only three constitutional issues. I'm trying to determine whether that does or does not allow Pullman abstention. I believe it does. I believe it does not allow Pullman abstention. And the reason is because the resolution of one permit would not resolve any of the constitutional issues, the claim would still proceed, the constitutional claim would still proceed. So we're challenging in the federal case, discreet permits. We're challenging the whole panoply of decisions, some of which have not even been rendered yet, to make sure that we're treated the same as all other commodities that the state does not disfavor. With the resolution of the 401 claim in state court, change the character in federal court of the Dormant Commerce Clause claim? No, sir, I don't believe it would change it at all. In fact, there's four state court proceedings, three have been decided. None of those have reached a single factual or legal conclusion that would change the Commerce Clause analysis one iota. Nor do we believe that any finding, either that the Section 401 permit complies with state law, that Section 401 denial does not comply with state law. We do not believe that would change the constitutional analysis at all. And what is the status of the fourth case? You say three of them are already all over. Yes, Your Honor. I'm wondering if this whole argument is moot at this point. I don't think so, Your Honor, because the fourth case will not be decided for some time. It's the Pollution Control Hearings Board proceeding. Currently, it's a waiting decision from the Court of Appeals. And a decision is expected, this is our estimate, within the next six to nine months. And we anticipate termination of that proceeding in 2023 or following. There will likely be additional appeals in that case. And so it will not be decided for some time. Now, the only issue in the state court matters is whether state laws have been complied with or not. That issue is really irrelevant to the Commerce Clause challenge, because for the Commerce Clause challenge, it does not matter whether or not state law was complied with. And indeed, defendants recognize this below and said, if the 401 denial is valid, it could still violate the Constitution. Thus, the district court judge's conflation of complying with state law and complying with the Constitution was, we respectfully suggest, 100% wrong. Let me spend a couple of minutes, if it's okay, on appealability. And then I'll reserve the balance of my time. And again, I believe that my colleague is giving me his five minutes, unless there are ICTA questions. Okay, then when the 10 minutes are up, I'll ask Scarlett to go ahead and put up the next five for you. Thank you. Let me talk a little bit about appealability, and then I'll reserve the rest of my time. This court has jurisdiction, because the district court's state order is final under 28, section 1291, as interpreted by the Supreme Court in Moses. I don't think the appealability of a poem and stay is really in doubt. This court has repeatedly held they're appealable, as is every circuit court to reach the issue. Instead, I think the real issue is whether not withstanding the fact that a poem and stay is appealable, there's an argument that that is sometimes a special or non final appeal, which does not count as final for purposes of distinction. Instead, it suggests the opposite. For example, I point you to Davis versus Walker, the Ninth Circuit case from 2014, in which the court said, quote, the stay amounts to a dismissal of the suit and is reviewable as a final decision under section 1291. More recently, a railroad versus city of Palmdale case, again, a Ninth Circuit decision from 2019. The court said, under Moses call to stay, quote, is effectively a final decision. Excuse me, excuse me, we can either let you just go till it says five minutes or Scarlett can put up the next file. I'd prefer that. Oh, sure. Yeah, I'll pause.  So Herrera made it quite clear that such an order, quote, is final for purposes of appellate review. And of course, the Moses Cone case in the Supreme Court said the same thing, quote, the state order was final for purposes of appellate jurisdiction, which was under section 1291. Now, in addition, there's a good practical reason to hear this appeal, which is that the dismissal of the other causes of action are now fully briefed and before this court, if they are heard, there's tremendous practical advantage. Because if the dismissal is reversed, as we think appropriate, there will be one trial on all the issues when the case is sent back. However, if these appeals are not heard now, there will be two trials because we'll have the Congress clause trial. And then we'll have to take another separate appeal where the briefing will be absolutely identical. And if we're correct, and we prevail, it will go back down to another another trial, which will be completely wasteful. I'm not sure I understand your point. You say that the district judge will have two trials? No, I don't understand why the district judge would have two trials. Because if, if the court doesn't hear the appeal of the collateral orders, if they're deemed not to merge in, then that would mean the only thing alive in this case to be tried now is the Congress clause claim. So we'll try the claim and the dismissal of the claim against the state agency under sovereign immunity. We'll have to reappeal those. And if we're correct, if we prevail, we'll have to go down and try those separate rather than if you hear them all now, suggesting not only is that appropriate under the law, but it has tremendous practical benefit. Because all those claims, the claims that were dismissed on social involvement and the Congress clause claim, which is still alive, pending the hearing, can all be heard by the trial court and tried at the same time. If there are no other questions, I'll reserve my remaining three minutes for rebuttal. Thank you. You may do that. And let me ask opposing counsel, would you prefer 15 minutes on the clock? Or would you prefer 10 and five? It's all one client. So Your Honor, we would prefer 15 minutes on the clock. And unless the court has questions regarding the 11th Amendment, I will give my time to Mr. Young. Okay, thank you. We'll hear from Mr. Young. Thank you, Your Honor. May it please the court. I'm Tom Young representing the state defendants. And as Mr. Callow just indicated, if the court has questions on the 11th Amendment, I would defer those to Mr. Callow. But otherwise, I will address all the other issues. Your Honor, the state did nothing more here than apply its environmental and land use laws to the single project before it. In staying Lighthouse's constitutional claims, the district court followed a long line of Ninth Circuit precedent, upholding Pullman stays in land use cases. And the judge was properly concerned that proceeding with this case during the pendency of the parallel state case would create a real risk of inconsistent decisions and wasted effort. With respect to the summary judgment orders, those are not appealable, because the district court did not certify them as final, and they do not merge into the Pullman stay. We asked this court to affirm the district court. With respect to the stay, the district court here properly abstained under both Pullman and Colorado River for three basic reasons. First of all, this court has said many times that land use cases such as this involves sensitive issues of social policy into which the federal courts should not intrude unless there is no other alternative. I would cite to you the Pearl investment case, the CY development case, the Colesman case, and there are many others. This case is effectively indistinguishable from those. In each of those cases, the developer was challenging either a permit denial or a permit condition on constitutional grounds. And what the court said was, first, the state court has to review whether the state court could do what it did under state law. Could the state even deny the permit under state law? Mr. Young, can I interrupt because your time is going to run. I'd like you to address the point made by Mr. Davis. He contends that Pullman abstention is improper here because even if the 401 decision is such that that takes that case, that takes it out of the case, there will nonetheless be remaining dormant commerce clause challenges and therefore the underlying constitutional question will not have been resolved. How do you respond to that? Yeah, the standard under Pullman is not that the state law issue would necessarily resolve all the constitutional claims, but rather it only must present them in a different light or render them moot. And so in what kind of a different light would it be presented? That is to say, we still have a dormant commerce clause claim. The argument is that this should be allowed to go forward because the state legislation is interfering with the free flow of commerce. So how would the dormant commerce clause change clause argument be altered? It would be altered if the by by virtue of collateral estoppel among other possibilities. So if the state courts uphold the 401 decision, then that decision is entitled to collateral estoppel in the federal case. And the findings then of the state court would be binding in the federal case. And that would alter considerably the consideration of the constitutional claims. The reason being that the claims in the two cases are virtually identical, even though they are couched in different legal terms. What's being argued in the state case is very much identical to what's being argued in the federal case. In both cases, the White House is contending that the state was biased, that the state did not have the proper basis to deny the permit, etc. And once the state court rules on those matters, then those kinds of arguments are going to be precluded in the federal case. And as the district court indicated, in that event, then there's not much left of the of the commerce clause claim, except perhaps for a pike balancing is what he indicated. So for example, discrimination would no longer be an issue, which is one of the questions, of course, under the commerce clause. You can see the identity of the complaint in state court, which is in the excerpts of record, the supplemental excerpts at page 32, with the complaint in federal court, which is at the excerpts page 203. If you read those two complaints side by side, you'll see that the same arguments, the same evidence, the same contentions are being made in both cases. And that leads to the to the scenario that the district court was concerned about, which is what happens if we have a finding in one case, that's inconsistent with the finding in the other case. If you have them both going at the same time, that's a real possibility. It's a real possibility that one court finds that the environmental impact statement did support the denial. And in the other case, perhaps Lighthouse prevails on its contention, but it did not support the denial. Well, which which is it? I mean, you can't have both these cases proceeding at the same time, without there being a real risk of conflict, inconsistency, potentially wasted effort, and so forth. And the court was very concerned about that. And Lighthouse admits on page 20 of their brief that the evidence that they intend to present in both cases is the same. So even though their claims are clothed in different legal terminology, in state court, it's due process and equal protection, and in federal court, it's commerce clause, the underlying bases of them are the same. And there are many of this court's Pullman cases, which say that when the in terms of state law arguments, that is a basis for abstention, because you need to then get resolved those state law issues. You need to resolve here, can the state deny a 401 using its SEPA substantive authority? That's a state law claim. You need to resolve here, can the state deny with prejudice? That's again, a state law claim that has to be all resolved, before you then turn to the constitutional question of whether or not there would be a interference with commerce. That's what all those this court's prior cases say. If you go back to Pullman itself, for example, in that case, the state law issue was whether or not the railroad commission could adopt the rule that they did under state law. The federal case was a discrimination case saying the rule was discriminatory. But the court said, Hey, wait a second, we need to decide the state law issue first. I understand Pullman. I've taught Pullman for 40 years. Okay, thank you, Your Honor. And I think this case is exactly that scenario. We need to decide under state law, whether what the state did was acceptable under state law, before turning to the constitutional question. Now, counsel makes the argument that, well, it doesn't really matter whether this does or doesn't comply with state law, because we still have to resolve the constitutional question. But that's a false contention, because the issue isn't whether the state law decision would somehow necessarily resolve the constitutional question. It's just a matter of whether there is a state law issue in the case that, if resolved, would either move the case or render it in a different light. And that is the case here. Now, the plaintiffs also make a contention about collateral estoppel. They say, well, if collateral estoppel doesn't apply, it would not apply under state law, under the spray case. And therefore, the district court erred in thinking that that was a question. Well, again, here, this is a matter of state law. It's a matter of state law, first and foremost, whether or not estoppel would apply. Whether the board's decision is entitled to an estoppel effect first has to be looked at under state law. And if it is, then it gets applied in the federal court. So that's a state law question that's raised here that needs to get resolved at the state court level before we get to the constitutional claim. It's not appropriate. Counsel, before you run out of time, I'd appreciate your turning to the merger question as to assuming that the Pullman abstention is correct, and that we have an appeal of that order. What happens to the preceding orders that were not otherwise certified for appeal? Yes, thank you, Your Honor. Our position is that the Pullman stay is appealable, but it is appealable as a collateral order under the collateral order doctrine. And as a result, there is no merger. There is no merger of the prior decisions. If you were to apply merger to a collateral order, you would expand the collateral order doctrine in a way that the Supreme Court has said should not be done. It's supposed to be narrowly construed. And that means that only the Pullman stay is reviewable, not the other decisions. Now, a final judgment is one that ends the case, and there's nothing left for the court to do. That's not the case here with the Pullman stay, because as counsel has argued, they contend that this case needs to come back to this court. And if they lose in state court, then that would be true. There would need to be a resolution then of their Commerce Clause claims. That being the case, since it's going to come back at some point, you can't say that the Pullman stay is in fact a final decision. Rather, it is a collateral order. It is something that is collateral to the merits. It's been finally determined. And if not appealable now, it would essentially escape reviewability. What is your response to the two trial scenario? It seems to me that what would happen is once the case, once the abstention is resolved by a state court decision, then everything would be appealed at the same time. And if remanded, there would be a single trial. But opposing counsel has argued that there would be first a trial on the Commerce Clause question separately. What is your response to that? Well, first of all, it's not clear that there ever would be a trial on the Commerce Clause to begin with. So that's a speculative assertion. The District Court never considered the summary judgment motion. So we don't know. But what I would say to you is that, you know, the real issue is not just strictly a matter of what's convenient or what makes sense or something like that. What matters is whether this Pullman stay is final or is it a collateral order? Because if it's final, then, yeah, merger would occur. But if it's not, if it's a collateral order and appealable on that basis, then there is no merger. And I would suggest to you that... But that doesn't quite answer Judge Graber's question as to whether or not there would in fact be two trials. Do you have an answer to that question? Yeah, I don't believe that there would be because if the court upholds the Pullman stay, you know, this case could go away entirely on the basis of the state case for one possibility. So it's not clear if there's ever going to be a trial on either of these claims. And it doesn't, you know, the policy is that there should be no piecemeal appeals. And there should be no, if the court considers these summary judgment orders now, and then the court enters a summary judgment order on the Commerce Clause, you'll then have another appeal. So it does not serve the policy against piecemeal appeal to hear these appeals now. Rather, there should only be one appeal from the all the merits of the issues. Once that's finally determined, then the court looks at all the merits together. I want to just briefly mention the Moses Cone case because the plaintiffs do rely on that heavily for their appealability argument. But the key point there is Moses Cone was a Colorado River stay and the court there said that that was appealable as a final decision, but it also said that it was appealable as a collateral order. So it didn't really  plaintiffs were able to appeal. And they were able to appeal the sole issue was the arbitrability of the claim. And that was going to get resolved, whichever court heard it, and however they decided it. So by remanding it to the state court, that in effect ended the federal case. However, the state court decided that that was the end of it. But here, it's different. We don't we don't have that here because this case could come back, depending on how the state court rules. As a result, the final as was the case of Moses Cone. Rather, it is a collateral order. And I think there are, you know, some prior cases from this court in which this court said that the Pullman stay was final, but I would suggest to you that there's no real analysis, no, no in depth analysis on those in those cases. And they are specific to their facts. So each each case has to be looked at on its own as to as to what the character of the decision is. Unless the court has other questions on those two points, I'm going to give one minute of my time or so to Mr. Callow, in the event the court has questions on the 11th amendment. Thank you. I, I don't have any such questions. No, no questions. No questions. Thank you. So we'll return, we'll return to Mr. Davis for rebuttal. Thank you very much, Your Honor. I'd like to first talk about collateral estoppel. Because the state court matters are not identical to the conference clause claims, collateral estoppel is not applicable, which was the entire basis of the abstention ruling. Counsel, that seems, excuse me, excuse me, there's a difference between claim preclusion and issue preclusion. And I think they're arguing issue preclusion, the factual matters, for example, that are identical and decided, would carry over not that the claims themselves are identical. Correct, Your Honor. And that identicalness test is not met. We know that, because the Sprave case, which is the last word from Washington state courts, said an exercise of religion claim and a free speech claim out of the same termination are not identical enough to preclude relitigation of the same facts. Here, those are much, much more analogous than state court claims about whether someone complied with state law and federal claims about whether someone complied with the Constitution. There's just no identicalness between the issues or the relevant facts, the relevant facts for a conference clause violation. And in fact, defendants twice have admitted this. Before this court they've admitted, quote, the state law claims are not identical to the commerce clause claims. That's docket entry 7-1 and also docket entry 21. No one contends that the claims are identical. And in fact, that was the conclusion of the Court of Appeals of the state of Washington in the supplemental authority we sent into this court under cover letter of March 17th. Now in my remaining minute, let me talk a little bit about prong one of Pullman, the sensitive area of is germane to the Congress clause claim. Instead, this is much more similar to Fireman's Fund versus City of Lodi, a Ninth Circuit case from 2002, where the court said hazardous waste were an issue. That's a serious issue of concern, but they're dealt with at the federal level under CERCLA. Very similar here, because the Clean Water Act permit, that's a federal statute, just like CERCLA. And of course, we have the federal issues under the Commerce Clause. This is much more similar to the United States versus Morris case, again, a Ninth Circuit case from 2001. That was about nuclear waste being stored in Nevada. And the Ninth Circuit said no Pullman stay. Why? The state law is clear. The state doesn't want the nuclear waste. The same thing here. The state law is clear. They don't want this facility. There is no issue of exceeding your time. The case just argued is submitted and we appreciate helpful arguments from those of you who spoke. We appreciate that very much. And we will move to our final case.
judges: Graber, W. Fletcher, Kobayashi